IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARTIN FLOREANI, CHRISTINA FLOREANI, AND CHARLENE FLOREANI, | § § § § | No. 491, 2024 |
| Plaintiffs Below, Appellant, | § § § | |
| v. | § § § | Court Below: Court of Chancery of the State of Delaware |
| FLOSPORTS, INC., | § § | C.A. No. 2023-0684 |
| Defendant Below, Appellee. | § § § | |

Submitted: September 18, 2025
Decided: November 24, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Court of Chancery of the State of Delaware. **AFFIRMED**.

Scott James Leonhardt, Esquire, ESBROOK P.C., Wilmington, Delaware; Emanuel C. Grillo (*Argued*), Esquire, ALLEN OVERY SHEARMAN STERLING US LLP, New York, New York, *for Appellants-Plaintiffs Martin Floreani, Christina Floreani, and Charlene Floreani.*

John L. Reed (*Argued*), Esquire, Peter H. Kyle, Esquire, and Daniel P. Klusman, Esquire, DLA PIPER LLP (US), Wilmington, Delaware; Benjamin D. Schuman Esquire, DLA PIPER LLP (US), Baltimore, Maryland, *for Appellee-Defendant Flosports, Inc.*

**LEGROW,** Justice:

This appeal resolves a Section 220 books and record dispute between dueling siblings concerning a closely held, family-run corporation. The parties have been litigating this action for more than three years, significantly longer than a summary proceeding is intended to last. Both sides bear responsibility for the protracted nature of this litigation.

The issues in dispute revolve around Section 220's form and manner requirements, specifically whether the statutory requirements are satisfied if (1) a stockholder makes a new demand and moves to amend the complaint to include the new demand before the statutory five-day waiting period expires; and (2) the affidavits verifying the demand are signed by stockholders two weeks before the demand is executed, without evidence that the demand did not change substantively in that timeframe. We answer both questions in the negative. Because the stockholders did not meet Section 220's form and manner requirements, we **AFFIRM** the Court of Chancery's decision denying inspection.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. The Company and Parties' Background

Defendant-Appellee FloSports, Inc. is a privately held Delaware corporation based in Austin, Texas that streams live sporting events and provides additional

sports-related content on a subscription-based model.[1]  Plaintiffs-Appellants Martin, Christina, and Charlene Floreani (collectively, "Stockholders") are siblings and stockholders in FloSports, Inc.[2]

Martin Floreani founded FloSports and ran the company for twelve years until FloSports' Board of Directors removed him as CEO in 2018.[3]  For the past six years, Stockholders' other brother, Mark Floreani, has been FloSports' CEO.[4]  During that time, FloSports did not hold annual stockholders' meetings and ceased sharing financial information with Stockholders.[5]  Lacking any financial information regarding their investment, Stockholders turned to Section 220 to obtain access to FloSports' books and records.

## B.    The Section 220 Demands

Seeking to value and potentially sell their shares, Stockholders made a series of three Section 220 demands over the course of ten months.[6]  FloSports denied all

---

[1] Appellant's Corrected Opening Br. at 5; Appellee's Answering Br. at 2; *Floreani v. FloSports, Inc.*, 2024 WL 1520182, at *1 (Del. Ch. Apr. 9, 2024) [hereinafter *Magistrate Post-Trial Report*].

[2] Appellant's Corrected Opening Br. at 5; *Magistrate Post-Trial Report* at *1.

[3] Appellant's Corrected Opening Br. at 5; Appellee's Answering Br. at 2; *Magistrate Post-Trial Report* at *1.

[4] Appellant's Corrected Opening Br. at 5; *Magistrate Post-Trial Report* at *1.

[5] Appellant's Corrected Opening Br. at 6–7; *Magistrate Post-Trial Report* at *1.  But FloSports has never held a stockholder meeting, even under Martin's direction. *Magistrate Post-Trial Report* at *1.

[6] *See* App. to Opening Br. at A74–79 (First Demand); *see also id.* at A59–73 (Second Demand); *see also id.* at A202–27 (Third Demand).

three demands, taking the position that each one failed to satisfy Section 220's form and manner requirements, though for different reasons.[7]

### 1. The First Demand

In November 2022, Stockholders served their first demand on FloSports through their counsel, Allen & Overy LLP (the "First Demand").[8] Allen & Overy sent the demand by electronic mail—representing that it was made on behalf of an undisclosed "group of investors"—and requested that FloSports' books and records be "available for inspection and copying."[9] The stated purposes of the demand were "ascertaining the value of the holders['] stocks," "soliciting possible purchasers," and "evaluating offers to purchase."[10]

Later that month, FloSports denied the First Demand, stating that it failed to satisfy Section 220's so-called "form and manner requirements."[11] The alleged deficiencies were that the First Demand "(i) was not accompanied by a power of attorney, (ii) was not made 'under oath,' and (iii) did not provide proof of stock

---

[7] App. to Opening Br. at A79 (Response to First Demand); *id.* at A108–11 (Response to Second Demand); *Magistrate Post-Trial Report* at *4 (raising issue with the timing of the Third Demand).

[8] App. to Opening Br. at A74–79 (First Demand); *Magistrate Post-Trial Report* at *2.

[9] *Id.*

[10] App. to Opening Br. at A76 (First Demand); *Magistrate Post-Trial Report* at *2.

[11] App. to Opening Br. at A79 (Response to First Demand); *Magistrate Post-Trial Report* at *2.

ownership."[12]  FloSports also objected to the First Demand's failure to identify the "group of investors" who were seeking inspection.[13]

Notwithstanding FloSports' concerns, it engaged in discussions with Allen & Overy about the requests in the First Demand.[14]  After Allen & Overy identified the "group of investors" making the demand, FloSports provided some financial information, including (i) three years of audited financials; (ii) unaudited financials for 2020; (iii) 409A valuation reports; (iv) the company's debt schedule as of year-end 2022 and its capitalization table as of February 23, 2023; and (v) forecasts of key operating results through 2025.[15]

### 2.    The Second Demand

Stockholders made their second demand in June 2023 (the "Second Demand").[16]  Although the Second Demand cured some of the defects in the First Demand, FloSports refused the Second Demand on the basis that it failed to comply with other form and manner requirements.[17]  Specifically, FloSports took the

---

[12] *Magistrate Post-Trial Report* at *2.

[13] *Id.*

[14] Appellee's Answering Br. at 6; *Magistrate Post-Trial Report* at *2.

[15] App. to Opening Br. at A108–11 (Response to Second Demand) (discussing what was disclosed in response to the First Demand); *see also id.* at A367 (Appellee Letter to Magistrate); *see Magistrate Post-Trial Report* at *3; *see also* Appellee's Answering Br. at 6.

[16] App. to Opening Br. at A59–73 (Second Demand); *Magistrate Post-Trial Report* at *3.

[17] App. to Opening Br. at A108–11 (Response to Second Demand) ("With respect to your June 20 Demand, it too fails to satisfy Section 220 and Delaware law . . . it is not our job to advise you,

position that the Second Demand was not made "under oath" as required by 8 *Del. C* § 220(b) because the affidavits that purported to affirm the truth of the Second Demand were signed and dated two weeks before Stockholders' counsel executed the Second Demand.[18] Nothing in the Second Demand or the attached exhibits allowed FloSports to ascertain whether the version of the demand that Stockholders verified was substantively identical to the final version sent to FloSports.[19]

After FloSports denied Stockholders' Second Demand, Stockholders filed their verified complaint with the Court of Chancery to compel inspection of FloSports' books and records listed in the Second Demand.[20]

### 3. The Third Demand

On September 27, 2023, Stockholders made their third demand on FloSports (the "Third Demand") and simultaneously moved to amend their complaint to revise the named plaintiffs and add information about the Third Demand.[21] The original

---

your co-counsel, or your clients on how to craft a demand that satisfies Section 220 . . . ."); *Magistrate Post-Trial Report* at \*3.

[18] Suppl. App. at SA15–18 (Affidavits for Second Demand); App. to Opening Br. at A59–73 (Second Demand); *Magistrate Post-Trial Report* at \*3. The "under oath" affidavits were dated June 6 and 7, but the Second Demand, executed by Stockholders' counsel pursuant to their power of attorney, was dated June 20, 2023.

[19] *E.g.*, Appellee's Answering Br. at 19–22.

[20] App. to Opening Br. at A22 (Ch. Dkt. at D.I. 1).

[21] *Id.* at A202–27 (Third Demand); *id.* at A228–39 (Motion for Leave); *id.* at A241–358 (Motion for Leave Exhibits); *Magistrate Post-Trial Report* at \*4.

plaintiffs were MMF Family Partners, Ltd., Christina Floreani, Charlene Floreani, and John Joseph Williamson; the amended complaint added Martin Floreani and removed MMF Family Partners, Ltd. and John Joseph Williamson.[22]

Notably, Stockholders' motion for leave to amend notified the court that they had served their Third Demand, which "sought the same books and records from [FloSports] as the [Second] Demand, but was made on behalf of Plaintiffs Martin Floreani, Christina Floreani, and Charlene Floreani only."[23]  Stockholders also attempted to avoid running afoul of Section 220 by representing that they did not intend to file their amended complaint until the statute's five-business-day waiting period had lapsed.[24]

## C.  Procedural History

Stockholders' Section 220 complaint was originally assigned to a Magistrate in Chancery.[25]  The parties' exceptions were then reviewed by the Court of Chancery.[26]

---

[22] App. to Opening Br. at A342 (Ex. B to Motion for Leave).

[23] *Id.* at A229 n.2 (Motion for Leave); *id.* at A354–55 (Ex. B to Motion for Leave); *Magistrate Post-Trial Report* at *4.

[24] App. to Opening Br. at A229 n.2 (Motion for Leave); *Magistrate Post-Trial Report* at *4.

[25] *See Magistrate Post-Trial Report* at *1.

[26] *See Floreani v. FloSports, Inc.*, 2024 WL 4637689, at *1 (Del. Ch. Oct. 31, 2024) [hereinafter *Court of Chancery Opinion*].

### 1.    Proceedings Before the Magistrate

The parties agreed to an original case schedule with a discovery deadline in late August 2023, a pretrial conference on September 22, 2023, and a trial date of September 27, 2023.[27]  The original case schedule, however, was vacated two days before the pretrial conference, and a new trial date was set for October 25, 2023.[28]  A week after the original scheduling order was vacated, on September 27, 2023, Stockholders served their Third Demand and filed their motion for leave to amend the complaint.[29]  Without receiving a response from FloSports, the Magistrate granted leave to amend on October 3, 2023, four business days after Stockholders made the Third Demand.[30]

On October 4, 2023, FloSports submitted a letter to the court requesting a telephonic hearing, alleging that the court lacked jurisdiction over the motion for leave because Stockholders did not abide by Section 220's five-day period and that the amended complaint should be dismissed.[31]  The letter also objected to the First

---

[27] App. to Opening Br. at A21 (Ch. Dkt. at D.I. 7).

[28] *Id.* at A16 (Ch. Dkt. at D.I. 25).

[29] *Id.* at A202–27 (Third Demand); *id.* at A228–39 (Motion for Leave); *id.* at A241–358 (Motion for Leave Exhibits); *Magistrate Post-Trial Report* at *4.

[30] App. to Opening Br. at A15 (Ch. Dkt. at D.I. 28); *Magistrate Post-Trial Report* at *5 ("The motion went unopposed until October 4th after leave was granted.").

[31] App. to Opening Br. at A363–69 (FloSports October 4 Letter to the Magistrate) ("Consequently, this Court lacked jurisdiction to entertain the Motion and the Amended Complaint should be dismissed with prejudice.").

and Second Demands, the changes in ownership, and Stockholders' alleged breach of the Confidentiality Agreement.[32] The next day, Stockholders responded with their own letter to the court, taking the position that the Third Demand was statutorily compliant.[33]

The following day, the Magistrate convened a telephonic hearing to address the recent filings.[34] At the teleconference, FloSports argued that Stockholders were not permitted to make the Third Demand and simultaneously file the motion for leave to amend.[35] FloSports questioned whether the Court of Chancery had jurisdiction over the Third Demand because of the alleged noncompliance with Section 220's five-day waiting period.[36] Intimating that its jurisdictional defense could be resolved with more time, FloSports requested a new trial date and additional time to take discovery and answer the amended complaint on its merits.[37]

---

[32] *Id.* (FloSports October 4 Letter to the Magistrate).

[33] *Id.* at A14–15 (Ch. Dkt. at D.I. 31). Stockholders also alleged that FloSports' counsel was not acting professionally.

[34] *Id.* at A14 (Ch. Dkt. at D.I. 33).

[35] *See Magistrate Post-Trial Report* at *4.

[36] *See id.*

[37] App. to Opening Br. at A523–24 (Telephone Conference Tr.) ("I do not dispute that the plaintiffs were entitled to serve a third demand, but they were not entitled to enforce it the way that they did. And rather than file a motion, I would much prefer to deal with that third demand on the merits [. . . .] FloSports is still entitled to answer the allegations in that demand, assert affirmative defenses, some of which will be different than the defenses raised in the current answer that's on file with respect to the complaint, and also to take some discovery as a consequence of things that we learned after the close of discovery in the original case."); *id.* at A525 (Telephone Conference

Upon the Magistrate's grant of a new trial date, FloSports' counsel stated that "[he] will stipulate to [Stockholders'] ability to file that amended complaint now that the five days has passed."[38] FloSports, however, continued to raise its objection to the timing of the motion for leave and the granting of the amended complaint on the basis that "[t]he fact that the 5-day period has now passed does not change the pleading defect,"[39] arguing that the Court of Chancery still "lacked jurisdiction over any proceeding to enforce the Third Demand at the time [Stockholders] filed their motion to add it,"[40] and that "FloSports should not have to defend against evolving demands . . . ."[41]

After the teleconference, Stockholders filed their amended complaint on October 10, 2023—nine business days after serving the Third Demand.[42] The parties

<hr>

Tr.) ("I do think there's a major jurisdictional issue as it relates to the motion and ultimately the amended complaint, but that can be avoided by getting that complaint properly before the Court beyond the five days and us dealing with it on the merits."); *id.* at A528–29 (Telephone Conference Tr.); *id.* at A530 (Telephone Conference Tr.) ("As a matter of fact, getting us a new trial date, I think, probably resolves everything because, like I said, I'm not—like I said in my letter, I'm not interested in making unnecessary work for people.").

[38] *Id.* at A555 (Telephone Conference Tr.).

[39] *E.g.*, *id.* at A661 (FloSports' Pre-Trial Br.). This argument has been consistently raised throughout all the proceedings below and on appeal before this Court. *See, e.g.*, Oral Argument, at 28:09–29:25, 37:56–39:28, *Floreani, et al. v. FloSports, Inc.*, No. 491, 2024 (Del. Sept. 3, 2025).

[40] App. to Opening Br. at A661 (FloSports' Pre-Trial Br.).

[41] *Id.* at A368 (FloSports October 4 Letter to the Magistrate).

[42] *Id.* at A12–13 (Ch. Dkt. at D.I. 35); *Magistrate Post-Trial Report* at *4.

also stipulated to an amended schedule, which the court granted on October 13, 2023.[43]

About a month later, on November 8, 2023, Stockholders proceeded to trial on their amended complaint.[44] In her post-trial report, the Magistrate rejected FloSports' contention that the court lacked jurisdiction when it granted Stockholders' motion for leave to amend the complaint.[45] The Magistrate found that the court maintained jurisdiction over the originally filed complaint and that Stockholders' Third Demand satisfied the five-day statutory period under Section 220(c).[46] The report reasoned that:

> Because the Court still maintained jurisdiction over the second demand and the other Plaintiffs; Plaintiffs filed the Amended Complaint on October 10th, curing any potential jurisdictional question; and for the reasons stated in the October 6th conference call with the Court, the Court finds the Third Demand satisfies the form and manner requirements under Section 220.[47]

The Magistrate then held that FloSports did not meet its burden in proving that Stockholders' purpose was pretextual because Stockholders' stated purpose of valuing their shares was legitimate, even if there was "personal animosity" and

---

[43] App. to Opening Br. at A11–12 (Ch. Dkt. at D.I. 36).

[44] *See id.* at A7 (Ch. Dkt. at D.I. 57).

[45] *Magistrate Post-Trial Report* at *6.

[46] *Id.*

[47] *Id.*

disagreement between the parties regarding Stockholders' use of the information.[48]

The court concluded that the scope of the demand was mostly proper because the documents—except for tax returns and other tax related documents—were "necessary and essential to value their shares."[49] The Magistrate also found that a confidentiality agreement was warranted and ordered the parties to meet and confer on the terms of the confidentiality order.[50]

In April 2024, the parties filed their exceptions to the Magistrate's final report.[51] Stockholders' notice sought clarity on its attorneys' fees and related discovery request because they were not addressed in the final report,[52] while FloSports' notice of exceptions re-raised its objections to Stockholders' compliance

---

[48] *Id.* at *7.

[49] *Id.* at *10. Stockholders requested the following documents: (a) "[a]ll of the Company's annual financial statements . . . from 2018 through the present," (b) "[u]pdates, periodic financial statements, or draft financial statements from 2018 through the present," (c) "[t]he most recent budget," (d) "tax returns for the years 2018 through the present," (e) "[a]ll work papers created, used, or relied upon . . . in preparing the Company's tax returns for the year 2018 through the present," (f) "[a]ll of the Company's charters . . . ," (g) "any proposal to purchase the Company's stock or to engage in any strategic transaction . . . ," (h) "[a]ny valuation of the Company's stock and/or assets as of any time from 2018 to the present . . . ," (i) "[m]aterials relating . . . to any transactions involving the Company's stock . . . ," (j) "[a] complete record or list of the Company's stockholders . . . ," (k) "[t]ransfer sheets . . . ," and (l) "[a]ll loan agreements, loan documents and payment schedules . . . ." *Id.* at *9. All but (d) and (e), the tax related requests, were granted by the Magistrate. *Id.* at *10.

[50] *Id.* at *10–11.

[51] App. to Opening Br. at A6 (Ch. Dkt. at D.I. 60, 61).

[52] *Id.* at A1042–44 (Stockholders' Notice of Exceptions).

11

with the statute's form and manner requirements and objected to nearly all of the Magistrate's findings.[53]

## 2. Proceedings Addressing FloSports' Exceptions

Upon review, the Court of Chancery granted FloSports' exceptions and held that all three demands failed to meet Section 220's requirements.[54]  The court held that the First Demand did not satisfy the statute's requirements because it was not made "under oath," was not accompanied by a power of attorney, and did not identify the stockholders making the demand.[55]  The Second Demand also failed; the court reasoned that Stockholders did not sign the oaths themselves and therefore did not comply with Section 220(b)'s requirement that a demand be made "under oath."[56]  Finally, the Court of Chancery held that the Third Demand failed because it did not comply with Section 220(c)'s requirement that a stockholder wait five

---

[53] *Id.* at A1045–48 (FloSports' Notice of Exceptions).

[54] *Court of Chancery Opinion* at *2.

[55] *Id.*

[56] *Id.* ("The second demand too fails because counsel for Plaintiffs signed the oath instead of Plaintiffs. Section 220 does not expressly state that the stockholder must sign the oath, but the manifest purpose of the oath is to ensure the truthfulness of the contents of the demand, including the stockholders' purposes. In this way, the oath requirement under Section 220 operates like the verification requirement for complaints. And as with a verification, the real client and not counsel must execute the oath.").

12

business days after making a demand before applying to the Court of Chancery for an order compelling inspection.[57] The court reasoned:

> Like the form-and-manner requirements, Delaware courts construe the five-day period strictly. [Stockholders] violated that requirement by petitioning the court—through the motion to amend—to enforce the third demand before the statutory five-day window closed.[58]

Having concluded that none of the demands met the statutory requirements, the court entered judgment for FloSports.

In November 2024, Stockholders filed their notice of appeal of the Court of Chancery's decision.[59]

## D.    Parties' Contentions

Stockholders do not contest the Court of Chancery's holding that the First Demand failed to comply with the statute's form and manner requirements.[60] But

---

[57] *Id.*

[58] *Id.* The Court of Chancery and the Magistrate used different starting dates to count the five-day waiting period. The Magistrate's report counted from the date of the actual filing of the amended complaint, while the Court of Chancery counted from the date of the motion for leave to file the amended complaint. *Compare Magistrate Post-Trial Report* at *5 ("At that time, Plaintiffs made it clear that they would file the amended complaint on a date certain (October 10th) which happened to be after the statutory five days and ultimately cure any potential jurisdictional defect because it provided the requisite time period for the Company to respond to the Third Demand.") *with Court of Chancery Opinion* at *2 ("Plaintiffs violated that requirement by petitioning the court—through the motion to amend—to enforce the third demand before the statutory five-day window closed.").

[59] App. to Opening Br. at A1 (Ch. Dkt. at D.I. 81).

[60] *See Court of Chancery Opinion* at *2 ("The first demand is clearly deficient under Section 220(b)."); *see also* Appellant's Corrected Opening Br. (raising no argument that the First Demand satisfied Section 220).

Stockholders argue that they are entitled to the inspection sought in the Second and Third Demands. As to the Second Demand, Stockholders argue that the Court of Chancery's finding—that the Demand "failed 'because counsel for Plaintiffs signed the oath instead of Plaintiffs'"—was "misplaced" and would impose a new requirement for a stockholder to sign the oath themselves, which is not required by the statutory language.[61] As to the Third Demand, Stockholders seek reversal of the Court of Chancery's holding, arguing that the Court of Chancery improperly relied on the motion for leave to amend the complaint when counting the five-day waiting period, or, alternatively, did not consider FloSports' "stipulation" that Stockholders were permitted to file their amended complaint after the teleconference, which also would moot any issue with the First and Second Demands.[62]

---

[61] Appellant's Corrected Opening Br. at 20 n.4 (quoting *Court of Chancery Opinion* at *2).

[62] *Id.* at 11–16. Based on FloSports' statements to the trial court, Stockholders contend that FloSports "expressly stipulated to the fact that the Third Demand complied with the Form and Manner requirements of Section 220." *Id.* at 20. Although FloSports' statements during the October 6 teleconference could be read as stating that an extension of the trial schedule would moot the company's defense regarding the five-day requirement, we cannot conclusively view the statements as waiver, and neither the court nor the parties seemed to treat them that way. *See* Oral Argument, at 26:30–29:25 ("That wasn't my intention . . . I wasn't giving up . . . I wasn't intending to waive any of my legal arguments . . . there were a bunch of ifs in what I was saying . . . ."), 37:56–39:28. To highlight a few occasions, the issue was raised in the October 6 conference, FloSports' pre-trial briefing, and in its Notice of Exceptions. App. to Opening Br. at A523–24 (Telephone Conference Tr.); *id.* at A661 (FloSports' Pre-Trial Br.); *id.* at A1045–48 (FloSports' Notice of Exceptions).

14

FloSports urges us to affirm the Court of Chancery's judgment. First, FloSports acknowledges that the Court of Chancery erred in holding that Stockholders did not sign the oaths for the Second Demand. FloSports contends, however, that the court's holding rejecting the Second Demand should be upheld on an alternative basis—the "under oath" requirement was not satisfied because Stockholders have not shown that the version of the demand that they verified did not substantively change in the two weeks before their counsel executed it.[63] Second, FloSports claims that the Court of Chancery did not have jurisdiction over the Third Demand because Stockholders' motion for leave to file the amended complaint was filed within Section 220's five-day mandatory waiting period.[64]

## II. STANDARD OF REVIEW

For Section 220 actions, we review questions of law *de novo* and review the Court of Chancery's determinations regarding the scope of relief and its limitations or conditions on inspection for abuse of discretion.[65] The issues on appeal require

---

[63] Appellee's Answering Br. at 19–22. FloSports acknowledges that the Court of Chancey's finding that counsel signed the oaths was incorrect; Stockholders signed their "under oath" affidavits. *Id.* at 20.

[64] *Id.* at 30–31.

[65] *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738, 748 (Del. 2019) (citing *Wal–Mart Stores, Inc. v. Ind. Elec. Workers Pension Trust Fund IBEW*, 95 A.3d 1264, 1271–72 (Del. 2014) and *United Techs. Corp. v. Treppel*, 109 A.3d 553, 558 (Del. 2014)).

15

us to determine whether the demand satisfied the statute's procedural requirements, which are questions of law subject to *de novo* review.[66]

## III.   ANALYSIS

Under 8 *Del. C.* § 220, a stockholder has a qualified right to inspect corporate books and records.[67]   Section 220 permits "any stockholder" to inspect "[t]he corporation's stock ledger, a list of its stockholders, and its other books and records" "for any proper purpose" upon making a "written demand under oath" that states the demand's purpose.[68]   Proceedings under Section 220 are intended to be summary in nature.[69]   The statute's form and manner requirements further this aim by defining clear parameters under which a stockholder may invoke their inspection rights along with a prompt timeframe under which a corporation may consider and respond to a demand.

---

[66] *See id.* at 748–49.

[67] *See NVIDIA Corp. v. City of Westland Police & Fire Ret. Sys.*, 282 A.3d 1, 12 (Del. 2022), *as revised* (July 25, 2022) (referencing 8 *Del. C.* § 220 (2010)); *see also Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 119 (Del. 2006).  The Demands were made on November 18, 2022, June 20, 2023, and September 27, 2023, respectively.  Therefore, the 2025 amendments to 8 *Del. C.* § 220 are inapplicable because the recent amendments "do not apply to or affect any action or proceeding commenced in a court of competent jurisdiction that is completed or pending, or any demand to inspect books and records made, on or before February 17, 2025." *See* S. Substitute 1 for S.B. 21, 153rd Gen. Assem., Reg. Sess. § 3 (Del. 2025) (enacted).

[68] 8 *Del. C.* §§ 220(a)–(b) (2010).

[69] *Brehm v. Eisner*, 746 A.2d 244, 267 (Del. 2000) ("From a timing perspective, however, we note that such a proceeding is a summary one that should be managed expeditiously.").

16

The stockholder bears the burden of proving that it strictly complied with the statute's procedural requirements for making a demand—without such compliance, a stockholder's right to inspection is not properly invoked.[70] To properly invoke the right to inspect a corporation's books and records, the stockholder must establish that:

(1) Such stockholder is a stockholder;
(2) *Such stockholder has complied with this section respecting the form and manner of making demand for inspection of such documents*; and
(3) The inspection such stockholder seeks is for a proper purpose.[71]

"This statutory language makes it clear that a stockholder must comply with the 'form and manner' of making the demand *before* the corporation determines whether the inspection request is for a proper purpose."[72] The statute requires that a stockholder, either "in person or by attorney or other agent," make a "written demand under oath" to the company that states the purpose of the demand.[73]

---

[70] *See Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 570 (Del. 1997) ("Under Section 220(c), when a stockholder complies with the statutory requirements governing the form and manner of making a demand to obtain a stockholder list, the corporation bears the burden of proving that the demand is for an improper purpose.") (citations omitted); *see also Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 145 (Del. 2012).

[71] 8 *Del. C.* § 220(c)(1)–(3) (2010) (emphasis added).

[72] *Cent. Laborers*, 45 A.3d at 144 (referencing 8 *Del. C.* § 220(c) (2010)) (emphasis in original).

[73] 8 *Del. C.* § 220(c) (2010) ("Any stockholder, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right . . . to inspect for any proper purpose . . . [t]he corporation's . . . books and records . . . .").

17

After a demand has been made on the corporation, a stockholder may file an action in the Court of Chancery to compel inspection if (1) the corporation refuses inspection, or (2) the corporation fails to reply to the demand within five business days after it has been made.[74] The five-day waiting period "is measured from the date of the corporation's receipt of the demand" and is strictly applied.[75]

The Court of Chancery entered judgment in favor of FloSports based on the court's conclusion that all three demands failed to meet Section 220's procedural requirements.[76] Upon review, we agree with the Court of Chancery; Stockholders did not carry their burden to establish that the demands complied with the statute's form and manner requirements. The parties' other arguments regarding proper purpose and the scope of inspection are not before us on appeal. The Court of Chancery's decision entering judgment in favor of FloSports is affirmed.

---

[74] *Id.* ("If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder pursuant to subsection (b) of this section or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection.").

[75] Donald J. Wolfe, Jr. & Michael A. Pittenger, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY § 9.07[c], at 9–140 (2d ed. 2023); *see, e.g.*, *Katz v. Visionsense Corp.*, 2018 WL 3953765, at *2 (Del. Ch. Aug. 16, 2018).

[76] Appellee's Answering Br. at 19–33.

### A. Stockholders' Third Demand did not comply with the statutory five-day waiting period.

The Third Demand did not satisfy Section 220(c)'s procedural requirements because Stockholders failed to wait five business days after making their demand before moving to amend the complaint to incorporate the Third Demand into the pending litigation. In moving to immediately bring the Third Demand into the pending action, Stockholders failed to abide by the statute's plain language and placed FloSports in the position of having to take and defend a litigation position before it had an opportunity to consider the new demand.

"Section 220(c) provides the corporation with a grace period of five business days in which to respond to a stockholder who demands the right to inspect the company's stocklist or other books and records."[77] Stockholders seek to define this five-day waiting period narrowly, arguing that their motion for leave to amend the complaint was not an "application" to the court that implicates the waiting period.[78] They contend that the Court of Chancery "conflated the filing of the motion to amend the Complaint with the filing of the Amended Complaint itself,"[79] reasoning that they complied with the statute because they "filed their Amended Complaint on

---

[77] Wolfe & Pittenger, § 9.07[c], at 9–140.

[78] *See* Appellant's Corrected Opening Br. at 12–16 ("In making its determination that the Floreanis failed to comply with Section 220(c)'s requirements of a five business day waiting period, the Court of Chancery ignored its own Rule 15(a)(3) . . . .").

[79] *Id.* at 12.

October 10, 2023—nine business days after serving the Third Demand on the Company."[80] This argument finds no support in the text or purpose of Section 220, and it is inconsistent with the Court of Chancery's precedent interpreting the five-day period.

To begin, Section 220's language is clear and unambiguous—a stockholder may apply to the Court of Chancery for an order compelling inspection if the corporation has refused to permit inspection or has not replied to the demand within five days.[81] "If the statute is unambiguous, then 'the plain meaning of the statutory language controls,' and our sole function 'is to enforce it according to its terms.'"[82] As such, we must apply Section 220's five-day period according to "the literal meaning of the statute's words."[83]

The text of Section 220(c) requires that, if the company does not respond, a stockholder must wait "5 business days after the demand has been made" before

[80] *Id.* at 14. FloSports alleges that the trial court did not have jurisdiction because Stockholders' motion for leave to file the amended complaint was made within the five-day mandatory and jurisdictional waiting period for Section 220. Appellee's Answering Br. at 30–31.

[81] 8 *Del. C.* § 220(c) (2010) ("If the corporation, or an officer or agent thereof, refuses to permit an inspection sought by a stockholder or attorney or other agent acting for the stockholder . . . or does not reply to the demand within 5 business days after the demand has been made, the stockholder may apply to the Court of Chancery for an order to compel such inspection.").

[82] *Wilkerson v. State*, 338 A.3d 477, 485 (Del. 2025) (quoting *Chase Alexa, LLC v. Kent Cnty. Levy Ct.*, 991 A.2d 1148, 1151 (Del. 2010) and *Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012)).

[83] *Id.* (quoting *Arnold*, 49 A.3d at 1183).

applying to the Court of Chancery for relief.[84] The statute refers broadly to an application to the court, and that language is not "reasonably susceptible to different interpretations."[85] The plain language of Section 220's five-day waiting period prohibits a stockholder from proceeding with the action, including making any applications to the court during those five days.

Stockholders made the Third Demand on September 27, 2023, which was the *same* day that Stockholders filed their motion for leave to amend.[86] Assuming FloSports received the demand that day, it had five business days—until October 4, 2023—to respond. At the earliest, and absent a refusal from FloSports within that five-day period, Stockholders could not apply to the court until October 5, 2023. Instead of waiting, Stockholders immediately moved for leave to amend the complaint to incorporate the Third Demand.[87] When FloSports did not respond to the motion by October 3, the court deemed the motion unopposed and granted it. It is undisputed that Stockholders could not have filed a new complaint before

---

[84] *See* 8 *Del. C.* § 220(c) (2010).

[85] *See Arnold*, 49 A.3d at 1183 ("A statute is ambiguous if it is reasonably susceptible to different interpretations, or if giving a literal interpretation to the words of the statute would lead to an unreasonable or absurd result that could not have been intended by the legislature.").

[86] *See* App. to Opening Br. at A202–27 (Third Demand); *see also id.* at A228–39 (Motion for Leave).

[87] *See* App. to Opening Br. at A228–39 (Motion for Leave).

October 5; their effort to incorporate the Third Demand into the pending litigation before the five-day window expired similarly violates the statute.

Stockholders sought to avoid a statutory foot fault by adding a footnote in the motion for leave to amend, stating that:

> While the Amended Renewed Demand was served on September 27, 2023 (the "Amended Renewed Demand Service Date"), less than five (5) business days from the date hereof, Plaintiffs will not file their Amended Complaint until the Court grants this motion and, in any event, no earlier than (5) business days after the Amended Renewed Demand Service Date.[88]

But the only reason to amend the complaint before the five days elapsed would be to seek a litigation advantage. Stockholders' passing attempt to evade their statutory noncompliance with a footnote does not, and cannot, waive the strictly applied waiting period in the statute's language.

Although we could end our analysis with the statute's plain language, we will briefly address Stockholders' contentions regarding Section 220's policy and the precedent interpreting the five-day requirement. Contrary to the arguments Stockholders advanced on appeal, their narrow interpretation of the five-day waiting period does not further the statute's purpose. Section 220's overarching purpose is to further stockholders' information rights without unduly burdening corporations.[89]

---

[88] *Id.* at A229 n.2 (Motion for Leave).

[89] *See Seinfeld*, 909 A.2d at 122 ("The evolution of Delaware's jurisprudence in section 220 actions reflects judicial efforts to maintain a proper balance between the rights of shareholders to obtain information based upon credible allegations of corporation mismanagement and the rights of

The statute achieves that purpose by carefully balancing stockholders' information rights against the burden that inspection places on the corporation.[90] To that end, the five-day waiting period gives the company a brief litigation-free window to consider the demand "*before litigation is initiated*."[91] A stockholder seeking inspection need not wait indefinitely but may not immediately proceed to litigation.

If a stockholder is permitted to advance litigation about a demand during the five-day window, the waiting period's purpose is defeated.[92] Therefore, any filing during this waiting period is an impermissible application to the court because it requires the parties to engage with the litigation before the waiting period elapses. In this case, the motion for leave to amend was filed on the same day that FloSports received the Third Demand.[93] The Magistrate also granted the motion before the waiting period elapsed.[94] Stockholders' motion and its granting by the Magistrate encroached on FloSports' litigation-free window. If FloSports wished to oppose the

---

directors to manage the business of the corporation without undue interference from stockholders.").

[90] *See Cent. Laborers*, 45 A.3d at 144.

[91] *See id.* at 146 (quoting *Mattes v. Checkers Drive–In Rests., Inc.*, 2000 WL 1800126, at *1 (Del. Ch. Nov. 15, 2000)) (emphasis in original).

[92] *See Frank v. Libco Corp.*, 1992 WL 364751, at *3 (Del. Ch. Dec. 8, 1992) ("[T]his Court cannot eviscerate the statutory five business day waiting period by ignoring it.").

[93] *See* App. to Opening Br. at A202–27 (Third Demand); *see also id.* at A228–39 (Motion for Leave).

[94] *See* App. to Opening Br. at A15 (Ch. Dkt. at D.I. 28) (granting the motion for leave on the morning of the fifth day of the waiting period).

23

motion to amend, it would be required to engage in litigation—the very thing the five-day period seeks to avoid. Allowing any filing related to the litigation before the five-day waiting period has elapsed is contrary to the careful balancing that Section 220's requirements aim to achieve.

Strict adherence to Section 220's form and manner requirements—including the five-day period—is also consistent with precedent.[95] The Court of Chancery has repeatedly held that the five-day waiting period "require[s] strict adherence."[96]

---

[95] *See Katz*, 2018 WL 3953765, at *1 (collecting cases). Commentators have questioned whether a strict application of the waiting period is necessary. *See* Wolfe & Pittenger, § 9.07[c], at 9–140:

> [T]he question has arisen whether a complaint filed prior to a refusal or the expiration of the waiting period is subject to dismissal out of hand. The question juxtaposes two conflicting policies. Permitting the matter to go forward has the effect of negating an express statutory requirement. Considerations of efficiency and practicality suggest, however, that dismissal when refiling clearly will ensue within a matter of days or hours represents slavish adherence to technical statutory requirements that serve no substantive end.

But, although technical, the consistent strict application of the statute's form and manner requirements create certainty for the parties and the trial court, avoids procedural defaults, and furthers the intended summary nature of these proceedings, which ultimately serves stockholders seeking timely information.

[96] *E.g.*, *Katz*, 2018 WL 3953765, at *1–2 (quoting *Central Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 145 (Del. 2012)). At times, parties have referred to the five-day period as jurisdictional, while others have expressed doubt respecting that description. *E.g.*, *Frank*, 1992 WL 364751, at *3 ("The *Gay* and *Odyssey* opinions preclude a holding that the five-business day waiting period is jurisdictional, (in the sense that the Court does not have the power to hear a suit). *Gay* also shows that, under certain circumstances, a shareholder's failure to make a sworn demand prior to filing suit can be cured by amendment."). The parties did not directly raise on appeal whether the five-day period is jurisdictional, and we need not resolve that issue to resolve the claims before us. It is enough to conclude that the Court of Chancery strictly abides by the five-day waiting period as a clear statutory requirement.

More than thirty years ago, the Court of Chancery, in *Frank v. Libco Corp.*, held that parties must comply with the five-day waiting period, reasoning that "this Court cannot eviscerate the statutory five business day waiting period by ignoring it."[97] Similarly, in *Katz v. Visionsense Corp.*, the court granted the company's motion to dismiss because the stockholder only waited four days after serving his demand to file the complaint.[98] Stockholders, however, note that *Katz*—in referencing *Gay v. Cordon Int'l Corp.*—acknowledged that the Court of Chancery has previously permitted amendments to a defective complaint and then proceeded on the new demand.[99] But *Katz* distinguished *Gay*, stating that the stockholders there had "satisfied all the requirements for proceeding on that demand."[100] In *Gay*, the stockholders waited five days before moving to supplement the complaint.[101] Since that was not the case in *Katz*, the court granted the motion to dismiss.[102]

Likewise, in *MaD Investors v. GR Companies*, the court strictly enforced the waiting period and stated that Section 220 was not "an equitable safe harbor for

---

[97] *Frank*, 1992 WL 364751, at *3.

[98] *Katz*, 2018 WL 3953765, at *1.

[99] Appellant's Corrected Opening Br. at 14–15 n.2.

[100] *Katz*, 2018 WL 3953765, at *2.

[101] *Frank*, 1992 WL 364751, at *3 (summarizing *Gay v. Cordon Int'l Corp*, 1978 WL 2491, at *2 (Del. Ch. Mar. 31, 1978)).

[102] *Katz*, 2018 WL 3953765, at *2.

Plaintiffs."[103]   Stockholders argue that *MaD Investors* only addressed filing a complaint before the five-day period expired, rather than a motion to amend.[104]  As explained above, filing a motion for leave to amend—which prompts a company to respond—still contravenes the five-day litigation-free window.

In sum, the statutory language, statutory purpose, and precedent all compel the conclusion that a motion to amend functions as an "application" to the court under Section 220.  Stockholders did not abide by the five-day waiting period for their Third Demand and, accordingly, did not comply with Section 220's form and manner requirements.

## B.  Stockholders did not demonstrate that they made the Second Demand "under oath."

FloSports' objection to the Second Demand relates to a different procedural condition of Section 220.  Section 220(b) requires that a demand be "under oath,"[105] which means that "the declarant [must] affirm[] [statements] to be true under penalty of perjury under the laws of the United States or any state."[106]   "Typically,

---

[103] *MaD Invs. GRMD, LLC v. GR Companies, Inc.*, 2020 WL 6306028, at *5–6 (Del. Ch. Oct. 28, 2020) (referencing *Katz*, 2018 WL 3953765, at *1, *3).

[104] Appellant's Corrected Opening Br. at 15.  Also, in *MaD Investors*, the stockholders sought to later "supplement" their premature complaint to cure the deficiencies; the Court of Chancery rejected that effort and dismissed the complaint.  *MaD Invs.*, 2020 WL 6306028, at *5–6.

[105] 8 *Del. C.* § 220(b) (2010).

[106] *Id.* § 220(a)(3).

stockholders do so by notarized affidavit accompanying a demand letter."[107]  The notarized affidavit must verify the final version of the demand and its substance.[108] FloSports argues on appeal that Stockholders did not verify the final version of the Second Demand because their "under oath" affidavits were signed on June 6 and 7, but their counsel waited until June 20 to execute the Second Demand under its special power of attorney.[109]

The Court of Chancery held that the Second Demand failed because "counsel for Plaintiffs signed the oath instead of Plaintiffs," reasoning that:

> Section 220 does not expressly state that the stockholder must sign the oath, but the manifest purpose of the oath is to ensure the truthfulness of the contents of the demand, including the stockholders' purposes. In this way, the oath requirement under Section 220 operates like the verification requirement for complaints. And as with a verification, the real client and not counsel must execute the oath.[110]

On appeal, FloSports concedes that this finding was incorrect because Stockholders did in fact sign the "under oath" affidavits.[111]  FloSports nevertheless urges us to affirm on alternative grounds—the two-week discrepancy between

---

[107] *Inter-Loc. Pension Fund GCC/IBT v. Calgon Carbon Corp.*, 2019 WL 479082, at *8 (Del. Ch. Jan. 25, 2019), *aff'd*, 237 A.3d 818 (Del. 2020).

[108] *See id.* (stating that the "under oath" requirement would not have been satisfied if there were substantial differences between the version reviewed by the client and the final version).

[109] Suppl. App. at SA15–18 (Affidavits for Second Demand); App. to Opening Br. at A59–73 (Second Demand).

[110] *Court of Chancery Opinion* at *2.

[111] Appellee's Answering Br. at 20; Appellant's Corrected Opening Br. at 20 n.4.

Stockholders' signing of the "under oath" affidavits and the execution of the Second Demand creates uncertainty about whether Stockholders verified the facts in the executed version of the Second Demand.[112]

This Court's review is limited to matters considered by a trial court, and "[p]arties are not free to advance arguments for the first time on appeal."[113] "Only questions fairly presented to the trial court may be presented for review . . . ."[114] But,

> [w]e recognize that this Court may affirm on the basis of a different rationale than that which was articulated by the trial court. We also recognize that this Court may rule on an issue fairly presented to the trial court, even if it was not addressed by the trial court.[115]

Although the Court of Chancery did not address the argument that FloSports relies on before this Court, FloSports presented the argument to the Court of Chancery, and the issue therefore is properly before us.[116]

The record allows us to address this issue without remanding for additional factual findings. To comply with the "under oath" requirement, Stockholders bear

---

[112] Appellee's Answering Br. at 21–22.

[113] *Del. Elec. Co-op., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court.").

[114] *Id.* (quoting Supr. Ct. R. 8).

[115] *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1390 (Del. 1995) (citing *Standard Distrib. Co. v. Nally*, 630 A.2d 640, 647 (Del. Super. 1993)).

[116] *E.g.*, App. to Opening Br. at A1082–85 (FloSports' Opening Br. in Supp. of Exceptions) ("The discrepancy in the dates between the verifications and the Second Demand is significant because the record includes no evidence that the Second Demand was even drafted at the time the 'under oath' affidavits were executed . . . Martin Floreani stated only that he relied on his 'lawyers.'").

the burden of establishing that they verified the *final* version of the demand.[117] They did not meet that burden.

First, the record is devoid of any evidence demonstrating that Stockholders verified the final version of their Second Demand. Stockholders signed their affidavits approximately two weeks before their counsel executed the Second Demand.[118] Although nothing in the statute requires that an oath be executed on the same day as a demand, a substantial lapse of time between the two events permits the argument that the version a stockholder verified differs substantively from the version sent to the company.[119] In *Inter-Loc. Pension Fund GCC/IBT v. Calgon Carbon Corp.*, the Court of Chancery held that a demand satisfied the "under oath" requirement despite a delay between the oaths' signing and the demand's execution because no substantive changes were made to the demand after the plaintiff signed, relying on the affidavit's language that it approved a version of the demand "in substantially final form" and the plaintiff's statement to the court that the only change made after the stockholder's review was to the date and signature.[120] Stockholders here lack such support.

---

[117] *See* 8 *Del. C.* § 220(b) (2010); *see also Calgon*, 2019 WL 479082, at *8.

[118] Suppl. App. at SA15–18 (Affidavits for Second Demand); App. to Opening Br. at A59–73 (Second Demand).

[119] *See Calgon*, 2019 WL 479082, at *8.

[120] *Id.*

Stockholders did not produce any evidence to support a conclusion that no substantive changes were made after they signed their affidavits. Instead, they invoked privilege in response to FloSports' efforts to obtain discovery on the issue. Stockholders created no record regarding the two-week delay, and they therefore failed to carry their burden of showing that the final version of the Second Demand was verified under oath.

On appeal, Stockholders argued that the Second Demand was not substantively different from the First Demand, and that the two-week time gap is therefore meaningless.[121] The record does not bear out that contention. The Second Demand made significant changes to the First Demand, including:

- Removing requests for "operating agreements, amended operating agreements, amended and restated operating agreements";

- Adding requests for materials relating to "any proposed 'de-SPAC transaction'";

- Adding requests for "any valuation performed in connection with any proposed de-SPAC transaction";

- Adding requests for "loans identified in the schedule previously provided"; and,

---

[121] *See* Oral Argument, at 6:32–7:02, *Floreani, et al. v. FloSports, Inc.*, No. 491, 2024 (Del. Sept. 3, 2025) ("the demand letter was the second demand letter, right, which was identical to the first one that was unsigned . . . we had the plaintiffs review the document demand that was made the first time as part of the second time . . . in the terms of the information contained therein it was the same between the first and the second.").

- Adding requests for "[a]ny correspondence or other documents, including electronic mail, concerning or relating to the refinancing or satisfaction of any existing indebtedness of the Company."[122]

The Second Demand also (i) stated that FloSports denied numerous requests in its response to the First Demand; (ii) informed FloSports about Stockholders' retention of Kinetic Advisors; and (iii) acknowledged the parties' NDA.[123] If anything, the changes between the First and Second Demands support the inference that the draft demand Stockholders verified differed meaningfully from the final version sent to the company.

Stockholders bore, but did not meet, the burden to prove that they complied with the procedural form and manner requirements for the Second Demand. Without meeting that burden, their inspection rights were not perfected.[124] Accordingly, we affirm the Court of Chancery's holding that the Second Demand failed on procedural grounds.[125]

---

[122] *Compare* App. to Opening Br. at A61–63 (Second Demand) *with id.* at A75–76 (First Demand).

[123] *Compare* App. to Opening Br. at A61–63 (Second Demand) *with id.* at A75–76 (First Demand).

[124] *See Cent. Laborers*, 45 A.3d at 144 ("Absent such procedural compliance, the stockholder has not properly invoked the statutory right to seek inspection, and consequently, the corporation has no obligation to respond.").

[125] Since we resolve the primary issue raised on appeal regarding Section 220's form and manner requirements by concluding that none of the demands complied with the form and manner requirements, we do not address the parties' arguments regarding (1) whether Stockholder had a "proper purpose;" (2) Stockholders status as such at the time of the Third Demand; or, (3) any issues relating to the scope of production or confidentiality. *See* 8 *Del. C.* § 220(c) (2010) (stating that all elements must be satisfied for a stockholder to be entitled to inspection of the corporation's books and records); *see also Katz*, 2018 WL 3953765, at *1 (collecting cases emphasizing that Section 220's procedural requirements must be strictly adhered too); *see also Cent. Laborers*, 45

## IV. CONCLUSION

For the foregoing reasons, the Court of Chancery's decision entering judgment in favor of FloSports is **AFFIRMED**.

---

A.3d at 144 ("This statutory language makes it clear that a stockholder must comply with the 'form and manner' of making the demand *before* the corporation determines whether the inspection request is for a proper purpose.") (referencing 8 *Del. C.* § 220(c) (2010)) (emphasis in original). The remaining issues are moot. *See Johns v. Council of Delaware Ass'n of Pro. Eng'rs*, 2004 WL 440276, at *4 (Del. Super. Jan. 29, 2004), *opinion vacated on reargument*, 2004 WL 2830937 (Del. Super. Apr. 12, 2004) ("The additional issues raised in [Appellant's] appeal are now rendered moot by the decision of this Court, and do not need to be discussed.").